UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ANCILLA WILLIAMS,

             Plaintiff,          CIVIL ACTION NO. 10-cv-11629

     vs.

                         DISTRICT JUDGE PATRICK J. DUGGAN

COMMISSIONER OF         MAGISTRATE JUDGE MONA K. MAJZOUB
SOCIAL SECURITY,

             Defendant.
_____/

**REPORT AND RECOMMENDATION**

**I.**    **RECOMMENDATION:**    This Court recommends that Plaintiff's Motion for Summary Judgment (docket no. 17) be DENIED, Defendant's Motion For Summary Judgment (docket no. 19) be GRANTED and the instant Complaint dismissed.

\*\*\*

**II.**    **PROCEDURAL HISTORY:**

Plaintiff filed an application for disability and Disability Insurance Benefits on October 17, 2006 alleging that she had been disabled since June 8, 2006 due to Bell's palsy, problems with her right side resulting from a fall in which she hit her head and depression. (TR 10, 139-41, 152, 156). The Social Security Administration denied benefits. (TR 83-89). Administrative Law Judge Ethel Revels (ALJ) held a de novo hearing on March 20, 2008 and subsequently found that the claimant was not entitled to a period of disability and Disability Insurance Benefits prior to June 26, 2008 when she was not under a disability within the meaning of the Social Security Act and became disabled beginning on June 26, 2008. (TR 19, 29). The Appeals Council declined to review the

ALJ's decision and Plaintiff commenced the instant action for judicial review. (TR 1-3).  The parties filed Motions for Summary Judgment and the issue for review is whether Defendant's denial of benefits was supported by substantial evidence on the record.

### III.    TESTIMONY AND RECORD EVIDENCE

Plaintiff was 47 years old on the alleged onset date. (TR 12, 34).  Plaintiff has a high school education and past work with a single employer for twenty-seven years, where she held positions including clerk and bus driver. (TR 34-35, 161).  Plaintiff stopped working in 2006 after she fell, injuring her right side and hitting her head. (TR 36-37, 163).   Plaintiff testified that she cannot perform her work as a bus driver due to balance issues, her back condition and the need to sit. (TR 39-42).  Plaintiff testified that she has dizziness and balance problems due to Bell's palsy. (TR 54, 163).  Plaintiff reported that she is afraid of driving and she does not drive. (TR 166).  Plaintiff testified that she has to have her daughter take her places now. (TR 44).

Plaintiff testified that she cannot perform any other work because she cannot sit long due to knee pain, her back causes pain when she walks, and hitting her head causes her to be unable to remember things. (TR 39-42).  Plaintiff testified that she cannot walk the length of a city block and she can stand for twenty to thirty minutes when using her cane or leaning against something. (TR 57, 65, 169, 177).  Plaintiff can sit about fifteen minutes. (TR 58).  Plaintiff testified that she can lift a gallon of milk, but could not lift it repeatedly, such as ten times per hour, and she has difficulty lifting her forty-pound granddaughter. (TR 60). Plaintiff complains of problems with her right hand worse than her left.   (TR 59).

Plaintiff testified that she treats with a psychiatrist approximately every two months for her depression. (TR 40-41).  Plaintiff testified that she first saw the psychiatrist in 1999. (TR 45). Plaintiff testified that since her fall she has not been able to take care of her household and her

2

daughter helps her with her personal needs such as dressing and showering.  (TR 41, 59, 164, 172, 186).  Plaintiff testified that she weighed 446 pounds and was 5'3" at the time of the hearing, having gained approximately one hundred pounds in the past two years prior to the hearing which she attributes to her depression causing her to eat more.  (TR 46-47).

Plaintiff testified that she reads although it is hard for her to concentrate, she cleans up her room in the morning and she naps once or twice a day for up to an hour and a half.  (TR 49).  Plaintiff is able to clean her house with help and she can perform laundry tasks if her daughter helps her get down the stairs into her basement.  (TR 50-51).  Plaintiff takes Wellbutrin for her depression, and takes Vicodin for pain, Zoloft and uses a Lidoderm patch for pain.  (TR 51-53, 64).  Plaintiff testified that she has to lie down after she takes Vicodin because it "knocks" her out.  (TR 53).  Plaintiff does not have side effects from any other medication.  (TR 53).

The Vocational Expert (VE) testified that Plaintiff's past work as a school bus driver was medium exertion and semiskilled with driving skills transferable to light exertion work.  (TR 66).  The ALJ asked the VE to consider an individual with the same age, education and work experience as Plaintiff, who is limited to walking less than a quarter of a block at a time, lifting less than ten pounds, able to sit and/or stand six to eight hours, cannot operate at hazardous heights or around dangerous machinery, and further limited to work that does not require bending, climbing ladders, scaffolds, ropes or stairs, does not require frequent ramp climbing, allows the individual to use a cane to ambulate, is limited to simple repetitive tasks due to "moderate limitations in the ability to maintain concentration for extended periods" and moderate limitations in the ability to understand, remember and carry out detailed instructions due to pain and depression, does not require walking and allows a sit/stand option without requiring sitting or standing for more than thirty minutes at a time.  (TR 68).

3

The VE testified that such an individual could perform unskilled sedentary work including visual inspector/sorter (approximately 1,500 positions in southeast Michigan), bench assembler (approximately 3,250 positions in southeast Michigan) and hand packager (sedentary, 3,250 positions in southeast Michigan).  (TR 69).  The VE testified that the use of a cane for both ambulation and support would eliminate the assembly and packager positions, but other jobs would be available, including security monitor (approximately 1,500 in southeast Michigan) and greeter or information clerk (approx. 4,000 in southeast Michigan).  (TR 69-70).  The VE confirmed that his testimony was consistent with the Dictionary of Occupational Titles.  (TR 70).  The VE testified that the inability to engage in repetitive use of the right hand would preclude the bench assembly and hand packager positions.  (TR 75).

## IV.   ADMINISTRATIVE LAW JUDGE'S DETERMINATION

The ALJ found that although Plaintiff meets the insured status requirements through December 31, 2011, had not engaged in substantial gainful activity since June 8, 2006, the alleged onset date, and suffers from sleep disorder, Bell's palsy, diabetes, obesity, hypertension, a back disorder, a knee disorder and depression and anxiety, she does not have an impairment or combination of impairments that meets or equals the Listing of Impairments.  (TR 12).  The ALJ found that Plaintiff had the residual functional capacity to perform a limited range of sedentary exertion work[1].  (TR 13-14).  The ALJ found that Plaintiff is not able to perform her past relevant work yet she is able to perform a significant number of jobs in the economy and therefore she is not

---

[1] "Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools.  Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties.  Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met."  20 C.F.R. § 404.1567(1).

suffering from a disability under the Social Security Act.  (TR 17-19).

## V.    LAW AND ANALYSIS

### A.    Standard of Review

Pursuant to 42 U.S.C. § 405(g), this Court has jurisdiction to review the Commissioner's

final decisions.  Judicial review of the Commissioner's decisions is limited to determining whether

his findings are supported by substantial evidence and whether he employed the proper legal

standards.  *See Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Walters v. Comm'r*, 127 F.3d 525,

528 (6th Cir. 1997).  Substantial evidence is more than a scintilla but less than a preponderance; it

is "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'"

*Richardson*, 402 U.S. at 401 (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938));

*Walters*, 127 F.3d at 528.  It is not the function of this Court to try cases *de novo*,  resolve conflicts

in the evidence or decide questions of credibility.  *See Brainard v. Sec'y of Health and Human*

*Servs.*, 889 F.2d 679, 681 (6th Cir. 1989); *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984).

In determining the existence of substantial evidence, the court must examine the

administrative record as a whole.  *See Kirk v. Sec'y of Health and Human Servs.*, 667 F.2d 524, 536

(6th Cir. 1981), *cert. denied*, 461 U.S. 957 (1983).  If the Commissioner's decision is supported by

substantial evidence, it must be affirmed, even if the reviewing court would decide the matter

differently, *Kinsella v. Schweiker*, 708 F.2d 1058, 1059 (6th Cir. 1983), and even if substantial

evidence also supports the opposite conclusion.  *See Her v. Comm'r*, 203 F.3d 388, 389-90 (6th Cir.

1999); *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (en banc) (noting that the substantial

evidence standard "presupposes that there is a zone of choice within which the decisionmakers can

go either way, without interference by the courts").

Plaintiff's Social Security disability determination was made in accordance with the five step

sequential analysis set forth in 20 C.F.R. section 404.1520(a)-(g).   The Plaintiff argues that

substantial evidence does not support the ALJ's decision denying benefits prior to June 26, 2008.

Plaintiff argues that the ALJ did not accord proper weight to the opinions of treating physicians and

that Plaintiff was suffering from the impairments at issue prior to June 26, 2008.  (Docket no. 17 pp.

3-7).

### B.      Discussion and Analysis

Substantial evidence exists in the record to support the ALJ's conclusion that Plaintiff had

the RFC to perform a limited range of sedentary work prior to June 26, 2008.  It is this finding which

Plaintiff challenges.  Plaintiff, however, misstates the ALJ's findings.  Plaintiff in her brief states

that the ALJ

> The Administrative Law Judge in support of her denial determined that the intensity,
> persistence, and limiting effects of her medically determinable impairments could
> reasonably be expected to produce the alleged symptoms after June 26, 2008, and the
> medically determinable impairments could not have produced the same symptoms
> before that date.  This inconsistency cannot be explained by the reasoning of the
> Administrative Law Judge in her decision, given the fact that she assigned greater
> weight to the treatment notes and limited weight to the testimony of the claimant.

On the contrary, the ALJ's determination that Plaintiff was disabled as of June 26, 2008

relies not at all on a change in the severity of the symptoms before and after that date, but rather,

Plaintiff's age and an application of the Medical-Vocational "Grid".  The ALJ found that as of June

26, 2008 Plaintiff was three months short of being fifty-years old, which would change her age

category classification from a "younger individual" to an individual "closely approaching advanced

age."  20 C.F.R. § 404.1563(c) and (d).  As a younger individual, Medical-Vocational Rule 201.21

would have directed a finding of "not disabled."  (TR 18).  The ALJ properly relied on this as a

framework and turned to the VE to testify as to the extent that the sedentary job base was further

eroded by Plaintiff's additional limitations.  The ALJ then exercised discretion in determining that

6

as of June 26, 2008, just three months prior to Plaintiff's fiftieth birthday, a direct application of Medical-Vocational Rule 201.14 would have resulted in a determination of "disabled."  20 C.F.R. § 404.1563(b); (TR 18-19).

Plaintiff correctly points out that several of Plaintiff's impairments were identified prior to Plaintiff's last date of work and/or prior to June 26, 2008 including depression, obesity, hypertension and the injuries resulting from Plaintiff's June 2006 fall.  (Docket no. 17 p. 4-5 of 7).  By way of history, the medical records show that Plaintiff was considering bariatric surgery as far back as 2003.  (TR 251, 272).  In December 2005 Jeffrey Genaw, M.D., noted his skepticism with Plaintiff's "motivation or dedication toward diet and exercise program" and he doubted that Plaintiff would do well long-term even with a bariatric surgery.  (TR 274, 280).

In February 2004 the record shows that Plaintiff injured her right foot when she dropped a bottle on it, resulting in soft tissue injury and a work note for three days.  (TR 252).  Plaintiff's history of depression was noted and at the time Plaintiff had been taking Paxil for approximately three years.  (TR 252).  In March 2004 Plaintiff's physician Susan Schooley, M.D., reported that Plaintiff complained of sleep problems, anxiety and anger and noted Plaintiff's report that she was "experiencing problems particularly at work because of a dysfunctional relationship with her supervisor."  Plaintiff had increased her Paxil which reportedly helped, but she still reported experiencing distress.  (TR 253).  In April 2004 Plaintiff complained of right knee pain and Mark Leider, M.D., noted Plaintiff's report that she had injured the knee three times in the past.  Dr. Leider reported elevated blood pressure, diagnosed chronic right knee pain and gave an orthopedic referral.  Plaintiff was prescribed Tylenol 3 for break through pain and was advised not to drive while taking it.  (TR 254).  May 2004 x-rays revealed degenerative changes in both knees.  (TR

7

257).  Knee pain continued in July 2004 with a recommendation by her treatment provider to engage in physical therapy.  (TR 262).

In July 2005 Dr. Schooley reported Plaintiff's diagnoses of morbid obesity, glucose intolerance and depression.  (TR 265, 267-74).  Records from 2005 also show diagnoses of hypertension and generalized anxiety disorder.  (Docket no. 267-74).  In August 2005 Plaintiff complained of right shoulder pain and an x-ray revealed irregularities about the greater tuberosity that could suggest rotator cuff tendinopathy, which needed further evaluation by MRI or ultrasound.  (TR 271).  On August 30, 2005 Plaintiff treated with Raghavendra Vemulapalli, M.D., who noted that Plaintiff was "here today to discuss options for treating her obesity and also wants a letter regarding her allergies."  (TR 272).  The doctor noted that "plaintiff says she is allergic to diesel fuel, which causes rhinorrhea and increased lacrimation."  (TR 272-73).  In February 2006 Plaintiff reported to the emergency room with left facial and head numbness.  (TR 283).

Plaintiff has a history of treatment with Olugbemiga Osoba, M.D., for her diagnoses of depression (296.35) recurrent and generalized anxiety disorder (300.02).  (TR 267-68).  Dr. Osoba has treated Plaintiff with Paxil, Wellbutrin and Klonopin.  (TR 267-68, 284-85, 289-90).

Plaintiff reported to the hospital on June 11, 2006 following her fall.  Upon examination the noted impressions were a contusion of the right shoulder, closed head trauma, and muscle strain of the right leg and arm.  (TR 223).  Plaintiff was prescribed Robaxin and Vicodin.  (TR 223).  An August 11, 2006 CT scan and an August 24, 2006 CT scan of Plaintiff's brain were normal.  (TR 226, 233).  A July 5, 2006 MRI of the right knee revealed a pseudoextruded degenerative tear of the lateral meniscus with resultant lateral femoral tibial osteoarthropathy, partial dehiscent or ruptured small Baker's cyst and an ACL sheath synovitis.  (TR 305, 325).

In August 2006 Plaintiff's psychiatrist Dr. Osoba reported that Plaintiff was "now reporting anxiety and insomnia."  Dr. Osoba also noted Plaintiff's self-report that she had "bruised" her "brain" in her fall.  (TR 289-90).  Dr. Osoba recommended that Plaintiff continue Paxil and Wellbutrin and start Klonopin and he encouraged her to start with a women's therapy group.  (TR 290). Dr. Osoba noted "severe concentration problems" and "severe memory problems."  (TR 289). He noted that Plaintiff had developed Bell's palsy and "had a noticeable right facial paralysis today." (TR 289).

"[M]ere diagnoses alone cannot provide sufficient support for an assessment of disabling limitations, unless other clinical evidence related to those diagnoses supports the severity of limitation assessed . . . ." *Nicholas v. Astrue*, 2009 WL 693159 at *10 (M.D.Tenn. Mar. 13, 2009) (citing *Murphy v. Sec'y of Health & Human Servs.*, 801 F.2d 182, 185 (6th Cir.1986)).  The ALJ properly considered all the evidence of record when determining the resultant limitations.

It is well settled that the opinions and diagnoses of treating physicians are generally accorded substantial deference.  Under 20 C.F.R. § 404.1527(d)(2), the ALJ must give a treating physician's opinion controlling weight if it is well supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the case record. However, dispositive administrative findings relating to the determination of a disability and Plaintiff's RFC are issues reserved to the Commissioner.  *See* 20 C.F.R. § 404.1527(e).  The ALJ "is not required to accept a treating physician's conclusory opinion on the ultimate issue of disability."  *Maple v. Comm'r of Soc. Sec.*, 14 Fed. Appx. 525, 536 (6th Cir. 2001); *see also* 20 C.F.R. § 404.1527(e).

The ALJ properly explained the weight given to Dr. Schooley's report that she would complete Plaintiff's disability paperwork "based on Dr. Osoba's note stating that she was disabled

9

from February 6th to February 10th based on her neuropathy and from then until February 27th based on her depression." (TR 15, 286, 291-93). The ALJ did not err in failing to adopt Dr. Schooley's opinion that Plaintiff was disabled. Furthermore, Dr. Schooley's February 16, 2006 comments are based on Dr. Osoba's findings and there is nothing to indicate that any period of disability is meant to extend beyond that referenced in the treatment note.

Contrary to Plaintiff's allegations, the ALJ also properly considered Dr. Rottenberg's opinions and explained the weight she assigned to them[2]. (TR 15-16). On August 16, 2006 Dr. Rottenberg reported that, "At this time, the patient is felt to be disabled from return to work due primarily to the problems involving her injured right knee. She should return for further follow-up next month to address ongoing care needs as well as to address any possible physical restrictions that might allow her to resume employment." (TR 328-30). Dr. Rottenberg wrote a statement for Plaintiff "no work through end of year," "had work injury" and "now has Bell's palsy." (TR 333). Plaintiff also references Dr. Rottenberg's January 23, 2008 notes which list Plaintiff's complaints and impairments. (TR 467).

Again, the ALJ properly noted that the ultimate issue of disability is reserved to the Commissioner and the ALJ considered Dr. Rottenberg's opinions and notes, and fully explained the reasons for the weight assigned to them. The ALJ correctly pointed out that the record does not show limitations that would preclude Plaintiff from the limited range of sedentary work which the ALJ concluded she can perform. Dr. Rottenberg addresses Plaintiff's past work as a bus driver, which

---

[2] The Court notes that Plaintiff's attorney has not provided transcript page number citations for any of the information he cites within Plaintiff's 484 page transcript. The Court has located the cited information, however, and notes that precise citations to page numbers within the several-hundred-page transcripts aids the Court's review immensely.

was classified at an exertional level greater than sedentary.  Dr. Rottenberg's opinions and notes are not inconsistent with the severe limitations set forth in the ALJ's RFC.

The ALJ also pointed out where the record showed that Plaintiff had improvements in her conditions where the objective medical evidence did not support the severity of the conclusion of disability, and where other evidence of record was inconsistent with this conclusion and showed mild indications.  (TR 15-16).  The ALJ pointed out that medical records from October 2006 showed that Plaintiff's facial condition (Bell's palsy) had improved with treatment including physical therapy although she was still unable to close her left eye.  (TR 16, 291).

Plaintiff underwent an independent medical examination on August 14, 2006 at her employer's request with Raimonds  Zvirbulis, M.D., orthopedic surgeon, who noted that June 28, 2006 x-rays showed patellofemoral arthritis and significant osteoarthritis of the right knee with narrowing of the lateral joint spaces and lateral compartment osteophytes and L3-4 disc space narrowing, minimal L4-5 narrowing and mild C4-5 disc narrowing.  (TR 300-07, 302).  The June 2006 x-rays were consistent with Dr. Zvirbulis's August 14, 2006 x-rays, showing similar findings in the left knee.  (TR 305).  Dr. Zvirbulis noted that Plaintiff weighs 346 pounds and "[c]omment is made that she is considering bariatric surgery."  (TR 302).  As the ALJ pointed out, despite reference to Plaintiff's impairments, the doctor concluded by recommending that Plaintiff "continue to work over the next three to four weeks with restrictions to avoid unnecessary climbing, squatting or bending activities relative to her right knee."  (TR 15-16, 307).  On October 16, 2006 the doctor continued these restrictions for an additional three months.  (TR 308-315).  An August 18, 2007 ultrasound showed "no evidence of deep vein thrombosis involving the common femoral, superficial femoral or popliteal veins on the right or on the left."  (TR 369).

11

The ALJ ultimately found that Plaintiff had severe limitations in the ability to perform work. The ALJ limited Plaintiff to performing sedentary work defined by lifting no more than ten pounds and further limited to no work at hazardous heights or around hazardous machinery, no bending, climbing ladders, stairs or scaffolds, no frequent climbing of ramps, allowing for the use of a cane for ambulation and involving only simple, repetitive tasks due to moderate limitations in concentration and allowing the option to sit/stand at will every 30 minutes with no standing for more than thirty minutes at a time, and walking limited to one-quarter of a block at a time.  (TR 13-14).

The limitations in the ALJ's RFC are more restrictive than Dr. Zvirbulis's and the Physical Residual Functional Capacity Assessment of medical consultant Demetrio Nasol, M.D.  (TR 345-52).  On December 14, 2006 Dr. Nasol opined that Plaintiff is able to lift and/or carry a maximum of twenty pounds occasionally and ten pounds frequently, stand and/or walk about six hours in an eight-hour workday, sit about six hours in an eight-hour workday and is unlimited in the ability to push and/or pull, except as set forth with respect to lifting and carrying.  (TR 346).  Dr. Nasol found that Plaintiff is limited to only occasionally performing the postural activities climbing, balancing, stooping, kneeling, crouching and crawling and has no manipulative or visual limitations.  (TR 347-48).

The ALJ found inconsistencies between Plaintiff's testimony and the medical record and assigned "great weight to the treatment notes" and "limited weight" to Plaintiff's testimony.  (TR 16).  "[A]n ALJ's findings based on the credibility of the applicant are to be accorded great weight and deference, particularly since an ALJ is charged with the duty of observing a witness's demeanor and credibility."  *Walters*, 127 F.3d at 531.  Credibility assessments are not insulated from judicial review.  Despite deference due, such a determination must nevertheless be supported by substantial

evidence and contain specific reasons for the weight the adjudicator assigned to the individual's statements.  *See id.*; SSR 96-7p.

To the extent that the ALJ found that Plaintiff's statements are not substantiated by the objective medical evidence in the record, the Regulations explicitly provide that "we will not reject your statements about the intensity and persistence of your pain or other symptoms or about the effect your symptoms have on your ability to work . . . solely because the available objective medical evidence does not substantiate your statements."  20 C.F.R. §  404.1529(c)(2).  In addition to objective medical evidence, the ALJ must consider all the evidence of record in making his credibility determination.  *See* 20 C.F.R. § 404.1529(c)(2), (3); *see also Felisky v. Bowen*, 35 F.3d 1027, 1039-40 (6th Cir. 1994).

The ALJ did not limit her evaluation of Plaintiff's credibility solely to the objective medical evidence and also considered Plaintiff's treatment, medication and compliance, activities of daily living and other evidence of record.  (TR 14-16).  "Medical history and objective medical evidence such as evidence of muscle atrophy, reduced joint motion, muscle spasm, sensory and motor disruption, are usually reliable indicators from which to draw reasonable conclusions about the intensity and persistence of pain and the effect such pain may have on the individual's work capacity."  *See Jones v. Sec'y of Health and Human Servs.*, 945 F.2d 1365, 1369-70 (6th Cir. 1991).  The ALJ noted that in January 2007 Susan Schooley, M.D., noted Plaintiff's report that she was not taking any medication at that time but had been advised by her psychiatrist to resume Zoloft, Wellbutrin and Ativan.  (TR 386).  Dr. Schooley noted marked tenderness of the right knee with movement.  (TR 387).  On examination Dr. Schooley reported that Plaintiff had "normal muscle bulk and tone in all four extremities," muscle strength was 5/5, fine finger movements were bilaterally slow, reflexes were 2+ and symmetrical. (TR 387).  These notes appear to be the same

notes dated as an October 2006 neurological examination. (TR 291-93). The ALJ noted that despite mood swings and struggles with her weight there was no information to preclude Plaintiff from a limited range of sedentary work. (TR 15). The ALJ's credibility determination is supported by substantial evidence.

Plaintiff also points out that examining physician A. Shah, M.D., concluded that Plaintiff had a GAF of 45 and argues that the ALJ did not give proper weight to Dr. Shah's opinion. (TR 354-57). On December 28, 2006 Dr. Shah found that Plaintiff suffered major depressive disorder, recurrent, in partial remission and chronic panic disorder. (TR 357). The doctor also noted that Plaintiff "has no history of head injury." (TR 357) .

"While a GAF score may be of considerable help to the ALJ in formulating the RFC, it is not essential to the RFC's accuracy. Thus, the ALJ's failure to reference the GAF score in the RFC, standing alone, does not make the RFC inaccurate." *See Howard v. Comm'r of Soc. Sec.*, 276 F.3d 235, 241 (6th Cir. 2002); *see also Kornecky v. Comm'r of Soc. Sec.*, 167 Fed. Appx. 496, 502 n.7 (6th Cir. 2006). ("A GAF score may help an ALJ assess mental RFC, but it is not raw medical data."). The ALJ considered Dr. Shah's opinion including the GAF and properly explained why he gave limited weight to this GAF including that the alleged severity of Plaintiff's reported depression and anxiety attacks is not reported elsewhere in the record to treatment providers and that the GAF is more severe than indicated by Plaintiff's functional abilities. (TR 16).

The ALJ followed the technique set forth in 20 C.F.R. section 404.1520a to evaluate mental impairments and incorporated those findings into his written decision. *See* 20 C.F.R. § 404.1520a(e)(2); (TR 13). The ALJ found that Plaintiff has mild restrictions in activities of daily living, mild difficulties in social functioning and moderate difficulties in the ability to maintain concentration, persistence and pace. (TR 13). These findings are also consistent with the mental

medical consultant James Tripp, Ed.D.'s evaluation in which he concluded that Plaintiff is "able to do simple, sustained, unskilled tasks with persistence." (TR 360-64). The ALJ accounted for Plaintiff's mental limitations in his RFC and the hypothetical question to the VE by including limitations to simple, repetitive tasks due to moderate limitations in concentration. (TR 68).

In a hypothetical question posed to the VE, an ALJ is required to incorporate only those limitations which she finds credible and supported by the record and the ALJ did so. *See Casey v. Sec'y of Health and Human Servs.,* 987 F.2d 1230, 1235 (6th Cir. 1993). The ALJ's RFC is supported by substantial evidence. The ALJ's hypothetical question to the VE incorporated Plaintiff's limitations and the VE's testimony is substantial evidence supporting the ALJ's finding that Plaintiff could perform a significant number of jobs in the economy prior to June 26, 2008. The ALJ's decision at step five is based on substantial evidence.

## VI.   CONCLUSION

The Court has considered the record in full and notes that "[i]t is the exceptionally rare case in which 'every piece of evidence points incontrovertibly towards a decision to deny benefits.'" *See Flagg v. Comm'r of Soc. Sec.*, 2002 WL 373466, at *1 (E.D. Mich. Feb. 19, 2002). The ALJ's decision is supported by substantial evidence, it was within the range of discretion allowed by law and there is insufficient evidence for the undersigned to find otherwise. Plaintiff's Motion for Summary Judgment (docket no. 17) should be DENIED, Defendant's Motion for Summary Judgment (docket no. 19) should be GRANTED and the instant Complaint DISMISSED.

## REVIEW OF REPORT AND RECOMMENDATION

Either party to this action may object to and seek review of this Report and Recommendation, but must act within fourteen (14) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and E.D. Mich. LR 72.1(d). Failure to file specific objections constitutes

a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health and Human Servs.*, 932 F.2d 505 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). Filing objections which raise some issues but fail to raise others with specificity will not preserve all objections that a party might have to this Report and Recommendation. *Willis v. Sec'y of Health and Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to Rule 72.1(d)(2) of the *Local Rules of the United States District Court for the Eastern District of Michigan*, a copy of any objection must be served upon this Magistrate Judge.

Within fourteen (14) days of service of any objecting party's timely filed objections, the opposing party may file a response. The response shall be not more than five (5) pages in length unless by motion and order such page limit is extended by the Court. The response shall address specifically, and in the same order raised, each issue contained within the objections.

Dated: April 4, 2011                    s/ Mona K. Majzoub
                                        MONA K. MAJZOUB
                                        UNITED STATES MAGISTRATE JUDGE

**PROOF OF SERVICE**

I hereby certify that a copy of this Report and Recommendation was served upon Counsel of Record on this date.

Dated: April 4, 2011                    s/ Lisa C. Bartlett
                                        Case Manager

16